**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

KELLY BARTLETT,

      Plaintiff,

v.                        CASE NO.:  0:16-cv-60583

NAVIENT SOLUTIONS, INC. and STUDENT
ASSISTANCE CORPORATION,

      Defendants.

_____/

**COMPLAINT**

**COMES NOW** Plaintiff, Kelly Bartlett ("Plaintiff"), by and through her undersigned counsel, and sues Defendants, Navient Solutions, Inc. ("NSI") and Student Assistance Corporation ("SAC"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

**INTRODUCTION**

1.      The TCPA was enacted to prevent companies like Navient and SAC from invading American citizen's privacy and prevent abusive "robo-calls."

2.      "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the

1

wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242 (11th Cir. 2014).

4.      "The FTC reported over 3.2 million complaints about robocalls in 2014, of which almost half (1,678,433) occurred after the consumer had already requested that the company stop calling. Federal Trade Commission, National Do Not Call Registry Data Book, FY 2014, at 5 (Nov. 2014)" ACA Int'l v. FCC, et al, D.C. Cir., No. 15-1211, (respondent brief filed 1/15/16), p17.

5.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." Fact Sheet:  Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

6.      This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney fees and costs.

7.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

8.      The alleged violations described in the Complaint occurred in Broward County, Florida.

## FACTUAL ALLEGATIONS

9.      Plaintiff is a natural person, and citizen of the State of Florida, residing in Broward County, Florida

10.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11.     Plaintiff is an "alleged debtor."

12.     Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13.     Defendant, NSI, is a corporation with its principal place of business located at 2001 Edmund Halley Dr., Reston, VA 20191-3436 and which conducts business in the State of Florida through its registered agent, Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.

14.     Defendant, SAC, is a corporation with its principal place of business in Delaware, wherein its registered agent is Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

15.     Defendant, NSI made calls concerning Plaintiff's alleged debt.

16.     Defendant, SAC made calls concerning Plaintiff's alleged debt.

17.      Defendant NSI used an "automatic telephone dialing system" (ATDS) to call the Plaintiff.

18.     Defendant SAC used an "automatic telephone dialing system" (ATDS) to call the Plaintiff.

19.      Defendant NSI used an "automatic telephone dialing system" (ATDS) to call the Plaintiff over 100 times.

20.     Defendant NSI used an "automatic telephone dialing system" (ATDS) to call the Plaintiff over 1,000 times.

21.    Defendant SAC used an "automatic telephone dialing system" (ATDS) to call the Plaintiff over 100 times.

22.    Defendant SAC used an "automatic telephone dialing system" (ATDS) to call the Plaintiff over 1,000 times.

23.    Defendant NSI has settled at least one TCPA lawsuit filed against them.

24.    Defendant SAC has settled at least one TCPA lawsuit filed against them.

25.    Defendant NSI has settled at least ten TCPA lawsuits filed against them.

26.    Defendant SAC has settled at least ten TCPA lawsuits filed against them.

27.    Defendant NSI attempted to collect a debt from the Plaintiff.

28.    Defendant SAC attempted to collect a debt from the Plaintiff.

29.     NSI and SAC are related sister companies.

30.    The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

31.    NSI and SAC called Plaintiff over ten thousand (10,000) times since March 2012.

32.    NSI and SAC attempted to collect a debt from Plaintiff by this campaign of telephone calls.

33.    NSI and SAC intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day and on back to back days, with such frequency as can reasonably be expected to harass.

34.    The telephone calls made to Plaintiff were all made using an ATDS.

35.    Each call NSI and SAC made to Plaintiff was made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using

a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §
227(a)(1).

36.     Each call NSI and SAC made to Plaintiff's cell phone was done so without the
"express permission" of Plaintiff.

37.     Beginning on or about January 1, 2011, Plaintiff began receiving automated calls
to her cellular telephone (***) ***-0759, from SAC and NSI attempting to collect on an
outstanding student loan.

38.     On multiple occasions in 2011 Plaintiff spoke to agents of SAC and NSI and
explained that she was on disability, could not pay and to cease calling her.

39.     Plaintiff, due to her disability and indigent status, has repeatedly had her loan in
forbearance.

40.     Despite being in forbearance due to economic hardships, SAC and NSI have
continued to bombard her cellular telephone with automated calls attempting to collect on the debt.

41.     An agent of NSI known only as "Heather" called Plaintiff.

42.     Plaintiff informed Heather repeatedly that she was on disability, had no money, that
the calls were stressing her out and to please stop calling.

43.     Upon hearing her pleas for a cessation of calls, Heather would normally instruct
Plaintiff that NSI was calling in order to "help out" client and that NSI wanted to put her account
into forbearance, despite the fact her account was already in forbearance.

44.     Due to the tremendous amount of calls Plaintiff has received throughout the years
she has not been able to catalogue each and every call received from NSI and SAC, however below
is a very small sampling of the call volume Plaintiff has received:

        i)      September 16, 2015 at 1:21 pm from 800-722-1300

    ii)       September 22, 2015 at 11:11 am from 800-722-1300

    iii)     September 23, 2015 at 10:54 am from 800-722-1300

    iv)     September 26, 2015 at 1:39 pm from 800-722-1300

    v)       September 30, 2015 at 10:48 am from 800-722-1300

    vi)     October 4, 2015 at 7:24 pm from 800-722-1300

    vii)    October 7, 2015 at 12:45 pm from 800-722-1300

45.     NSI and SAC share a data base that contains complaints from individuals.

46.     NSI and SAC share a data base of complaints from individuals that have complained that they have asked for NSI and SAC to stop calling however the calls did not stop.

47.     NSI has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to the Plaintiff's cellular telephone in this case.

48.     SAC has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to the Plaintiff's cellular telephone in this case.

49.     NSI has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer to remove the number.

50.     NSI has been the subject of a lawsuit where the individual asked for the calls to stop however the individual making the calls failed to enter the request to stop calling into the account notes.

51.     SAC has been the subject of a lawsuit where the individual asked for the calls to stop however the individual making the calls failed to enter the request to stop calling into the account notes.

52.     SAC has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case.

53.     NSI has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case.

54.     Defendants' corporate policy is structured as to continue to call individuals like the Plaintiff, despite these individuals explaining that they wish for the calls to stop.

55.     SAC'S corporate policy is to "help out" consumers."

56.     SAC is a debt collector pursuant to the Fair Debt Collection Practices Act.

57.     NSI and SAC have a nationwide policy of denying the use of an ATDS.

58.     NSI and SAC continue to deny using an ATDS despite the FCC's July 10, 2015 Omnibus Order.

59.     NSI has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

60.     NSI has numerous complaints against it across the country asserting that their automatic telephone dialing system continues to call the wrong people.

61.     NSI has had numerous complaints from consumers against them across the country asking to not be called, however the Defendants continue to call.

62.     NSI'S corporate policy provided no means for the Plaintiff to have her number removed from the call list. NSI'S corporate policy is to ignore requests for calls to stop.

63.     SAC'S corporate policy provided no means for the Plaintiff to have her number removed from the call list. SAC'S corporate policy is to ignore requests for calls to stop.

64.     None of NSI'S telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

65.     SAC'S telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

66.     Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.  The Defendant has been sued civilly in Federal Court 284 times in the last three (3) years (Attached hereto as Exhibit "A").

67.     Since January 2015, Defendant has had 168 complaints classified under "communications tactics" filed against it with the Consumer Financial Protection Bureau (Attached hereto as Exhibit "B").

68.     In the last three (3) years, the Defendant has had 1,994 complaints reported to the Better Business Bureau (BBB)[1], of which 1,335 of those complaints are classified as being related to "Billing/Collection Issues" (attached hereto as exhibit "C").

69.     NSI and SAC, willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

---

[1] Retrieved from http://www.bbb.org/delaware/business-reviews/loans/navient-in-wilmington-de-92002017/ on 3/11/2016.

## COUNT I
## NAVIENT SOLUTIONS, INC.

### (Violation of the TCPA)

70.     Plaintiff incorporates paragraphs one (1) through sixty-nine (69).

71.     Defendant willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Defendant was calling the wrong number and to stop calling Plaintiff.

72.     Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Defendant was calling the wrong number and to stop calling Plaintiff.

73.     Navient repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully requests judgment against Navient for statutory damages, punitive damages, actual damages, interest, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
## NAVIENT SOLUTIONS, INC.

### (Violation of the FCCPA)

74.     Plaintiff incorporates paragraphs one (1) through sixty-nine (69).

75.     At all times relevant to this action Navient is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

76.     Navient has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

77.     Navient has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

78.     Navient has violated Florida Statute §559.72(9) by claiming, attempting or threatening to enforce a debt when such person knows that the debt is not legitimate.

79.     Navient's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Navient for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
## STUDENT ASSISTANCE CORPORATION

### (Violation of the TCPA)

80.     Plaintiff incorporates Paragraphs one (1) through sixty-nine (69).

81.     Defendant willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Defendant was calling the wrong number and to stop calling Plaintiff.

82.     Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Defendant was calling the wrong number and to stop calling Plaintiff.

83.     SAC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully requests judgment against SAC for statutory damages, punitive damages, actual damages, interest, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT IV
### STUDENT ASSISTANCE CORPORATION

### (Violation of the FCCPA)

84.     Plaintiff incorporates one (1) through sixty-nine (69).

85.     At all times relevant to this action SAC is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

86.     SAC has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

87.     SAC has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

88.     SAC has violated Florida Statute §559.72(9) by claiming, attempting or threatening to enforce a debt when such person knows that the debt is not legitimate.

89.     SAC'S actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SAC for statutory damages, punitive damages, actual damages, costs, interest,

attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT V
## STUDENT ASSISTANCE CORPORATION

### (Violation of the FDCPA)

90.     Plaintiff incorporates Paragraphs one (1) through sixty-nine (69).

91.     At all times relevant to this action Defendant is subject to and must abide by 15 U.S.C. § 1692 *et seq*.

92.     Defendant violated 15 U.S.C. § 1692(c) by communicating with the Plaintiff at an unusual time or a time which should be known to be inconvenient for the Plaintiff.

93.     Defendant violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

94.     Defendant violated 15 U.S.C. § 1692(f) by using a false, deceptive, or misleading representation or means in connection with the collection of a debt.

95.     Defendant violated 15 U.S.C. § 1692(g) by failing to send the Plaintiff a 30-day validation notice within five (5) days of the initial communication with the Plaintiff. Defendant further violated this provision of the FDCPA by failing to communicate the "mini-Miranda" during each communication.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SAC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*s/William Peerce Howard*
William Peerce Howard, Esq.
Florida Bar No.:  0103330
Amanda J. Allen, Esq.
Florida Bar No.: 98228
The Consumer Protection Firm, PLLC
210-A South MacDill Avenue
Tampa, FL 33609
Telephone:  (813) 500-1500
Facsimile:  (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
Attorney for Plaintiff